# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| JON CHARLES VANCE, | ) | |
| | ) | Case Nos. 1:18-cr-114, 1:23-cv-91 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner Jon Charles Vance's motion to vacate, correct, or set aside her conviction pursuant to 28 U.S.C. § 2255. (Doc. 1 in Case No. 1:23-cv-91; Doc. 392 in Case No. 1:18-cr-114.) For the following reasons, the Court will **DENY** Petitioner's motion.

## I. BACKGROUND

On August 8, 2018, a federal grand jury returned an indictment charging Petitioner with: (1) one count of conspiring to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 ("Count One"); (2) aiding and abetting to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2 ("Count Nineteen"); and (3) abetting to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2 ("Count Twenty"). (Doc. 3 in Case No. 1:18-cr-114.) Prior to trial, Petitioner moved to suppress methamphetamine and a scale found during the search of a truck he was using. (Doc. 100 in Case No. 1:18-cr-114.) The Court denied Petitioner's motion to suppress (*see* Docs. 176, 187 in Case No. 1:18-cr-114), and, after a two-day trial, a jury returned

a verdict finding Petitioner guilty on all three counts. (Doc. 300 in Case No. 1:18-cr-114.)

Petitioner then moved for a judgment of acquittal, or, alternatively, for a new trial, arguing that

an error on the verdict form precluded the jury from finding beyond a reasonable doubt all the

elements necessary to convict on Counts Nineteen and Twenty. (Doc. 315 in Case No. 1:18-cr-

114.) On July 14, 2020, the Court granted in part Petitioner's motion to the extent it reduced

Petitioner's conviction on Count Nineteen to the lesser-included charge of violating 21 U.S.C.

§§ 841(a), (b)(1)(C). (Doc. 344 in Case No. 1:18-cr-114.) The Court subsequently sentenced

Petitioner to 300 months' imprisonment on each of his counts of conviction, to run concurrently,

and to be followed by ten years of supervised release. (Doc. 349 in Case No. 1:18-cr-114.)

Petitioner appealed his conviction and sentence to the United States Court of Appeals for

the Sixth Circuit. (*See* Doc. 352 in Case No. 1:18-cr-114.) In affirming the Petitioner's

conviction and sentence, the Sixth Circuit summarized the underlying facts of this case as

follows:

> *The Initial Drug Enterprise.* In mid-2016, Jon Vance and Megan Beatty became "50-50" partners in a methamphetamine distribution business. According to Beatty's testimony, she traveled from Tennessee to Atlanta, Georgia, about once per week to purchase methamphetamine from a supplier. At first, she was purchasing about "10 ounces," but soon she was purchasing "one to two kilos." . . . On one occasion, Vance drove with Beatty to Atlanta, but otherwise Beatty made the trip alone and Vance would simply give Beatty money to pay for his half of the drugs. The cost of a kilogram of the drugs was between $4,000 and $6,000. After a trip to Atlanta, Vance and Beatty brought the methamphetamine to a storage unit or the house in which they were both living, where they "would stand side by side and weigh it out" into ounce-size bags. They then sold the drugs to their own customers. This process was repeated "[t]oo many [times] to count."

> In late 2017, Beatty introduced Vance to her then-boyfriend, Derrick Kitchens. Between October 2017 and January 26, 2018, Kitchens and Beatty made one to two trips per week to Georgia to buy methamphetamine from a supplier, and then Vance and Kitchens would split the drugs at an auto-repair shop owned in part by Vance. On their first trip they purchased one to two kilograms, but after that they were purchasing, "on average," three to six kilograms each trip. . . . Although Beatty was no longer selling, Vance and Kitchens would pay Beatty to use her car

2

for the supply trips.  After Kitchens was arrested on January 26, 2018, Vance found a new supplier.

*Smuggling Drugs Into Jail.*  Kitchens called from the Hamilton County Jail and spoke to Beatty and Vance on February 13, 2018.  Kitchens proposed a scheme to "make a killing."  Kitchens's plan was for Beatty and Vance to smuggle methamphetamine and tobacco into the jail, and then he would sell the drugs for $150 to $200 per gram.  Kitchens, in turn, would send Vance and Beatty money using an electronic funds card.  Vance and Beatty agreed to the plan.

Beatty and Vance immediately went to a store, where they purchased supplies to wrap and package the contraband.

Next, they drove to the house of one of Vance's acquaintances, and Vance purchased methamphetamine.  While Beatty drove to the jail, Vance and another passenger packaged the methamphetamine and tobacco using two quarter coin rolls, plastic wrap, and double-sided tape around the outside.

Vance and Beatty both walked into the Jail. While Beatty filled out paperwork to pick up Kitchens's property, Vance sat down on a metal bench. As instructed by Kitchens, Vance leaned over and stuck both packages to the underside of the bench.  Unbeknownst to Vance, local law enforcement was watching and waiting for him.  A detective saw Vance put something under the bench after sitting down.  Vance and Beatty were arrested.  Under the bench where Vance was sitting, another detective found one tobacco package and one methamphetamine package.  A lab test showed that the methamphetamine was 92 percent pure and weighed 13.63 grams (almost half an ounce), for a total of 12.53 grams of pure methamphetamine.

. . .

*Vehicle Search.*  In March 2018, Vance and Connie Beltran were arrested for shoplifting at a Walmart store in Collegedale, Tennessee.  The arresting officers searched Vance and seized $1,649 and two knives.  Although Vance told the officers that "some guy dropped him off," he had in his hand a set of car keys, which included a broken GMC key.  Beltran, however, told police "something about a white truck."  The officers then viewed the parking lot security video, which showed Vance and Beltran arrived earlier in a white GMC pickup truck. Using the key seized from Vance, Officer Gienapp entered the white GMC truck and started the engine.  He immediately stopped and exited the truck when Officer Holloway ordered him to do so and stated that they would get a search warrant. Walmart's management told the officers that the truck should be removed from the premises. As a result, the truck was towed to the police department's impound lot, and the officers obtained a search warrant for the truck.

When officers searched the truck, they found a backpack and in it: a digital scale and 128.67 grams (about 4.5 ounces) of 99 percent pure methamphetamine

divided into several bags, which equates to 127.38 grams of pure methamphetamine.

Beatty testified that on the night before Vance was arrested, she saw him put into his backpack a digital scale and "anywhere from 7 to 10 ounces" of methamphetamine, divided between separate bags, and that Vance said he was planning to "drop off around 4 ounces," but "he didn't know if ... somebody else might want some." . . . According to Beatty, the price of an ounce of methamphetamine was "[a]bout $400." . . . Beatty also stated that she saw Beltran and Vance, with his backpack, leave in a white GMC truck.

Beltran's testimony was consistent. She stated that after Vance talked with Beatty, "he grabbed his backpack and we got in the white truck and we left."

They drove to visit Vance's friend, Vance "sold him meth" from his backpack, and then they went to Walmart.

*United States v. Vance*, Case Nos. 20-5819/5820, 2021 WL 5133250, at *1–2 (6th Cir. Nov. 4, 2021) (internal citations omitted).

After the Sixth Circuit affirmed Petitioner's conviction and sentence, he filed a petition for writ of certiorari to the United States Supreme Court, which it denied on April 19, 2022. (Doc. 380 in Case No. 1:18-cr-114.) Petitioner then timely filed the instant § 2255 motion on April 17, 2023. (Doc. 1 in Case No. 1:23-cv-91; Doc. 392 in Case No. 1:18-cr-114.) In his § 2255 motion, Petitioner argues that the Court should vacate his conviction and sentence because his counsel was ineffective based on his failure to: (1) object to the error in the jury instructions during trial; (2) raise certain arguments regarding the Court's denial of his motion to suppress on appeal; (3) object to and appeal the Court's calculation of his advisory guidelines range; (4) include arguments Petitioner wanted included in his reply brief on appeal; (5) properly "advise him on all facts and law relevant to his decision to plead not guilty and proceed to trial"; (6) "investigate and present available material" in connection with his motion to suppress; (7) "correctly object" to the report and recommendation recommending denial of his motion to suppress; (8) "investigate and present available material at trial and failed to timely object to the

unlawful admission of evidence by the prosecution"; (9) "investigate or present available evidence and legal authority material to the sentencing"; and (10) "investigate or present the strongest issues available to [Petitioner] for his [d]irect [a]ppeal." (Doc. 1, at 8–13 in Case No. 1:23-cv-91.) Petitioner also claims that his attorney had an unspecified conflict of interest. (*Id.* at 13.) Petitioner's § 2255 motion is now ripe for the Court's review.

## II. STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."[1] *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

## III. ANALYSIS

Petitioner asserts that the Court should vacate his conviction and sentence because he received ineffective assistance of counsel. To collaterally attack his conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case."

---

[1] In ruling on a § 2255 petition, the Court must also determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). In this case, an evidentiary hearing is not needed because the record conclusively shows that the Petitioner is not entitled to relief.

*Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Therefore, the Court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims."  *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").  Additionally, the prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

### A.  Motion to Suppress

Petitioner first asserts that he received ineffective assistance because his counsel:  (1) did not raise certain arguments in objecting to the magistrate judge's report and recommendation, which recommended denying his motion to suppress; (2) did not request a *Franks* hearing; and (3) did not argue that officers lacked probable cause to enter the truck under *New York v. Class*, 475 U.S. 106 (1986).   (*See* Doc. 1-1, at 1.)

To the extent Petitioner contends that he received ineffective assistance of counsel because his attorney did not "correctly object" to the magistrate judge's report and recommendation, that argument fails.  First, Petitioner's attorney objected to the magistrate judge's report and recommendation, and the Court overruled Petitioner's objections and denied his motion to suppress.  (Docs. 185, 187 .)  Second, to the extent Petitioner claims his counsel

should have requested a *Franks* hearing, Petitioner does not explain any factual basis supporting his argument that counsel should have challenged the validity of the search warrant used to search the truck or that the information in the warrant affidavit included false statements or statements made with reckless disregard for the truth. Finally, to the extent Petitioner otherwise contends that his counsel was ineffective in connection with moving to suppress evidence seized from the truck, that argument fails because, as the Sixth Circuit has explained, he "has no right to challenge the seizure and search of the truck . . . because there is no evidence he was lawfully in possession of the truck." (Doc. 372, at 7–8 in Case No. 1:18-cr-114.) Accordingly, Petitioner's § 2255 motion will be denied to the extent he contends that he received ineffective assistance of counsel in connection with his motion to suppress.

### B. Counsels' Investigation

Petitioner next argues that he received ineffective assistance of counsel because his attorneys failed to adequately investigate certain issues related to his case, including: (1) not taking photographs of the stairwell at the Hamilton County Jail; (2) failing to investigate issues related to his motion to suppress; (2) failing to "investigate or present available material at trial"; (3) failing to "investigate or present available evidence and legal authority material to [his] sentencing" (4) failing to "investigate or present the strongest issues available" on direct appeal. (Doc. 1, at 12, in Case No. 1:23-cv-91.)

A defendant who alleges a failure to investigate by counsel must identify "what the investigation would have revealed and how it would have altered the outcome." *United States v. Birdsong*, No. 5:16-016-DCR, 2019 WL 4696410, at *2 (E.D. Ky. Sept. 26, 2019) (citation omitted). Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less

7

than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Lang v. Bobby*, 889 F.3d 803, 814–15 (6th Cir. 2018). Petitioner bears the burden of establishing that his counsel did not properly investigate. *Carter v. Mitchell*, 443 F.3d 517, 532 (6th Cir. 2006) ("Without proof to the contrary, we must assume that counsel did investigate . . . .").

In this case, Petitioner has not met his burden of demonstrating that his counsel failed to properly investigate issues related to his case; rather, Petitioner generically asserts that his counsel did conduct an adequate investigation and then summarily concludes that "[b]ut for Counsel's error, there is a reasonable probability that the outcome of his proceedings would have been different." (Doc. 1, at 12, in Case No. 1:23-cv-91.) Such conclusory allegations do not identify what counsel's investigation should have revealed or how it would have altered the outcome of Petitioner's case. As a result, Petitioner has not demonstrated that counsels' investigations fell below an objective standard of reasonableness or that but for counsels' investigatory errors the outcome of his case would have been different. Accordingly, the Court will deny Petitioner's § 2255 motion to the extent he contends that he received ineffective assistance of counsel based on his counsels' failure to investigate his case properly.

### C. Conflict of Interest

Petitioner also asserts that counsel was ineffective because he "labored under an actual conflict of interest" when he moved to continue the trial date based on a scheduling conflict with another trial (Doc. 1-1, at 6), and when he requested an extension to file Petitioner's appeal brief based on his trial schedule (*id*. at 9–10). To establish a claim of ineffective assistance of counsel based on a conflict of interest, a petitioner must show an actual conflict and prejudice resulting from the conflict. *See McNeal v. United States*, 17 F. App'x 258, 262 (6th Cir. 2001) (explaining

8

that "[t]o establish an actual conflict, the defendant must point to specific instances in the record to suggest an actual conflict or impairment of his interests," and that "[t]he petitioner must show that the attorney made a choice between possible alternative courses of action . . . helpful to one client but harmful to another").

In this case, Petitioner has not demonstrated an actual conflict or prejudice resulting from the alleged conflict. Moreover, attorneys often represent multiple clients in cases that are proceeding simultaneously and routinely request that courts continue matters or grant extensions to file pleadings to accommodate their schedules. Petitioner's motion wholly fails to explain how his counsel's requested continuance and extension of time to file his appellate brief constitutes an actual conflict of interest or that his counsel's actions prejudiced him such that the outcome of his trial or his appeal would have been different. Accordingly, the Court will deny Petitioner's § 2255 motion to the extent he claims that he received ineffective assistance of counsel based on a purported conflict of interest.

### D. Plea Negotiations

Petitioner also argues that he received ineffective assistance of counsel during plea negotiations. Specifically, Petitioner contends that his attorney failed to present a plea agreement offered by the Government in a timely manner and that his attorney failed to advise him of all facts and law relevant to his decision to plead not guilty and proceed to trial. (Doc. 1, at 12 in Case No. 1:23-cv-91.) E-mails attached to Government's response, however, demonstrate that Petitioner's counsel did promptly provide him with a copy of the Government's proposed plea offer and discussed it with him, but Petitioner decided to proceed to trial. (*See* Docs. 7-1, 7-2 in Case No. 1:23-cv-91.) To the extent Petitioner contends that his counsel failed to properly advise him as to the facts and law necessary to determine whether he should plead

9

guilty, Petitioner has not identified any facts or law that his counsel should have advised him of in connection with his decision to reject the Government's plea offer. Finally, to the extent Petitioner argues that his counsel should have negotiated a favorable plea that reserved the right to appeal the denial of his suppression motion, Petitioner has no right to a plea agreement, and the Government is not required to accept any terms proposed by a defendant. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Accordingly, Petitioner has not demonstrated that his counsel's representation fell below an objective standard of reasonableness in connection with plea negotiations or that there is a reasonable probability the outcome of his proceeding would have been different absent his counsel's alleged ineffective assistance.

### E. Discovery

Petitioner next argues that he received ineffective assistance during discovery, primarily contending that the Government unreasonably delayed in providing him with certain discovery prior to his initial suppression hearing, and that his counsel should have renewed or reopened his motion to suppress based on discrepancies in Officer Holloway's suppression hearing testimony and the dashcam/bodycam recordings disclosed after his initial suppression hearing. (*See* Doc. 1-1, at 2–4.) These arguments fail because Petitioner received supplemental discovery nearly six months before his trial, and, as a result, he had full discovery from the Government in plenty of time for its use a trial. Under these circumstances, there was no due process violation, and counsel was not ineffective for failing to make an argument to that effect. Additionally, Petitioner has failed to demonstrate that his counsel's representation fell below an objective standard of reasonableness by failing to move to reopen the suppression hearing based on the supplemental discovery production. At best, Petitioner has identified only minor and immaterial discrepancies between officer testimony during the suppression hearing and dashcam/bodycam

recordings eventually produced by the Government.  These minor inconsistencies do not wholly

discredit the officers' testimony at the suppression hearing, *see United States v. Pedicini*, 804 F.

App'x 351, 354 (6th Cir. 2020), and Petitioner has not demonstrated that had his attorney moved

to reopen the suppression hearing the result of the suppression hearing would have been

different.  Accordingly, Petitioner has not met his burden of demonstrating an error of

constitutional magnitude as it relates to his attorney's representation during discovery.

### F.  Trial

Vance also argues that he received ineffective assistance at trial because counsel:  (1)

failed to present "available material" (Doc. 1, at 12 in Case No. 1:23-cv-91); (2) did not object to

"unlawful admission of evidence" by the Government (*id.*); (3) failed to ask certain questions to

witnesses and object to certain testimony and evidence (Doc. 1-1, at 7–8 in Case No. 1:23-cv-

91); and (4) failed to "properly review jury instructions" before trial (*id*. at 8).

As it relates to counsel's decisions at trial, "tactical decisions of trial counsel are

particularly difficult to attack, and a [petitioner's] challenge to such decisions must overcome a

presumption that the challenged action might be considered sound trial strategy."  *Hurley v.

United States*, 10 F. App'x 257, 260 (6th Cir. 2001).  To that end, to show "constitutionally

ineffective representation" a petitioner must show "that a reasonable probability exists that, but

for counsel's unprofessional errors, the result of the [trial] would have been different and that

counsel's errors undermined the reliability and confidence in the result."  *Id*.  Moreover,

counsel's decisions regarding questioning of witnesses, however, are matters of trial strategy

and, thus, are "effectively insulated" from review in the context of a motion made pursuant to 28

U.S.C. § 2255.  Similarly, whether counsel lodges an objection to evidence at trial is a matter of

trial strategy, and failure to object to the admissibility of inadmissible evidence does not

constitute ineffective assistance unless the evidence so prejudicial that it "essentially defaults the case." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). "Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Id*.

In this case, Petitioner has not met his burden of demonstrating that counsel's strategic decisions at trial fell below an objective standard of reasonableness. Although Petitioner identified questions and objections he believes his counsel should have pursued, he has not explained how counsel's failure to ask those questions or make those objections falls outside the parameters of sound trial strategy. Moreover, Petitioner has not met his burden of demonstrating that there is a reasonable probability result of the trial would have been different had counsel asked questions Petitioner wanted him to ask, objected to evidence Petitioner wanted him to object to, or presented evidence Petitioner wanted him to introduce. Further, to the extent Petitioner claims that his attorney failed to properly review the jury instructions, that argument fails because the record indicates that counsel did review the proposed jury instructions both before and during trial, and Petitioner has not identified any error in the jury instructions that the Court ultimately gave. Accordingly, Petitioner has not demonstrated that his counsel's performance at trial fell below an objective standard of reasonableness or that the result of his trial would have been different absent his counsel's alleged ineffective assistance.[2]

---

[2] To the extent Petitioner argues that he received ineffective assistance because his counsel failed to object to the verdict form, that argument fails because the Court ultimately disregarded the question in the verdict form that contained the error and reduced Petitioner's conviction to a violation of 18 U.S.C. § 841(b)(1)(C), rather than § (b)(1)(B). Moreover, the Sixth Circuit considered the verdict-form issue on direct appeal and determined that Petitioner ultimately received a benefit from the clerical error on the verdict form. *Vance*, 2021 WL 5133250, at *8–9. As a result, even though counsel failed to object to the error in the verdict form, Petitioner has

### G. Sentencing

Petitioner next argues that he received ineffective assistance of counsel at sentencing because his attorney did not "correctly object" to: (1) the drug quantity used to calculate his base offense level; (2) to the forfeiture amount; and (3) the criminal history points assessed to him. (Doc. 1, at 12 in Case No. 1:23-cv-91; Doc. 1-1, at 8–9 in Case No. 1:23-cv-91.) Petitioner's argument fails because his counsel objected to all three of these issues at sentencing and because the Sixth Circuit expressly found that there was no error in calculating Petitioner's base offense level, the amount of methamphetamine attributed to him, and the forfeiture amount. *See Vance*, 2021 WL 5133250, at *9–11. To the extent Petitioner claims that his counsel incorrectly objected to the computation of his criminal history, that argument also fails because he has not demonstrated that the Court incorrectly calculated his criminal history points or that his counsel's decisions regarding which objections to make at sentencing fell below an objective standard of reasonableness such that the outcome of his sentencing would have been different. Accordingly, Petitioner has not met the *Strickland* standard as it relates to his counsel's representation at sentencing.

### H. Appeal

Finally, Petitioner contends that he received ineffective assistance of counsel on direct appeal. (*See* Doc. 1, at 12 in Case No. 1:23-cv-91; Doc. 1-1, at 9–11 in Case No. 1:23-cv-91) The Supreme Court has recognized that counsel must "support his client's appeal to the best of his ability" and be an "active advocate [on] behalf on his client." *Anders v. California*, 386 U.S. 738, 744 (1967). However, this right to effective assistance of counsel "does not include the

---

failed to demonstrate that the result of the proceeding would have been different given that the Court accounted for the verdict form's error and reduced Petitioner's conviction on that count accordingly.

right to counsel for bringing a frivolous appeal." *Smith*, 528 U.S. at 278.  Counsel also is not required to "raise every nonfrivolous issue requested by the client" *Jones v. Barnes*, 463 U.S. 745, 750 (1983) and in fact, courts have noted that it is often a good strategy to raise only the strongest arguments.  *See, e.g.*, *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) ("Indeed, the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy.") (citations and internal quotations omitted).  Therefore, the fact that counsel did not raise a certain issue on appeal that a petitioner wanted her to raise does not necessarily establish ineffective assistance of counsel.  Instead, "[a] petitioner must show that the omitted claim was stronger than the issues actually raised." *Haight v. Jordan*, 59 F.4th 817, 846 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 578 (2024).  This is a high bar for a petitioner to clear given the deference that courts must give to the tactical decisions of appellate counsel.  *See Smith*, 528 U.S. at 288 (noting that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent").

In this case, Petitioner has failed to meet his burden of demonstrating that his counsel omitted claims stronger than the issues actually raised on appeal or that, had counsel raised those arguments, the results of his appeal would have been different.  The jury verdict form included the statutory thresholds for the drug quantities necessary to convict him under 18 U.S.C. § 841(b)(1)(A), (B), or (C), and it would have been frivolous for his counsel to argue that other drug amounts should have been included on the verdict form because the Sixth Circuit has explained that a jury need only determine that a drug quantity surpasses the threshold amount. *United States v. Grooms*, 194 F. App'x 355, 363 (6th Cir. 2006).  To the extent Petitioner argues that his counsel should have raised the discrepancies between officer testimony at the

suppression hearing and dashcam/bodycam footage, that argument also fails because, as discussed above, there were only minor and immaterial discrepancies between officer testimony during the suppression hearing and dashcam/bodycam recordings, none of which is significant enough to reasonably suggest that he would have prevailed on appeal had his counsel raised that argument. (*See infra* § III.A.) Petitioner's argument that his appellate counsel should have argued that his prior counsel was constitutionally ineffective in litigating his suppression motion also fails because he has not demonstrated his prior counsel was constitutionally ineffective and because appellate courts "generally do not review ineffective assistance claims on direct appeal." *United States v. Dixson*, No. 23-1400, 2024 WL 2974483, at *5 (6th Cir. June 13, 2024). To the extent Petitioner contends that his counsel should have raised additional arguments regarding the drug quantity attributed to him at sentencing, that argument fails because the Sixth Circuit has already reviewed and determined that the Court did not err in calculating drug quantity attributable to Petitioner and the resulting base offense level. *See Vance*, 2021 WL 5133250, at *9–11. Petitioner has also failed to demonstrate that the likelihood of his appeal would have been different if his counsel had challenged his criminal history score on appeal or had his attorney raised new arguments in his reply brief. At bottom, none of the arguments identified by Petitioner are "clearly stronger" than the arguments his attorney actually raised on direct appeal. As a result, Petitioner has not satisfied his burden of demonstrating that he received ineffective assistance on direct appeal.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate his sentence (Doc. 1 in Case No. 1:23-cv-91; Doc. 392 in Case No. 1:18-cr-114) is **DENIED**. This action will be **DISMISSED WITH PREJUDICE**. Should Petitioner give timely notice of an appeal from this order, such

notice will be treated as an application for a certificate of appealability, which is **DENIED** because he has failed to make a substantial showing of the denial of a constitutional right or to present a question of some substance about which reasonable jurists could differ. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, the Court has reviewed this case pursuant to Rule 24 of the Federal Rules of Appellate Procedure and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. *See* Fed. R. App. P. 24.

        **AN APPROPRIATE JUDGMENT SHALL ENTER.**

                                    **/s/ *Travis R. McDonough***
                                    **TRAVIS R. MCDONOUGH**
                                    **UNITED STATES DISTRICT JUDGE**